# LACKEY v. METROPOLITAN LIFE INS. CO.—174 S. W. (2d) 575.

Middle Section.   March 13, 1943.

Petition for Certiorari denied by Supreme Court, October 2, 1943.

Jay C. Evans, John W. Hilldrop, and Joseph L. Lackey, all of Nashville, for plaintiff in error.

John J. Hooker and Moore & Ewing, all of Nashville, for defendant in error.

FELTS, J. Plaintiff brought this action against the Metropolitan Life Insurance Company to recover $50,000 damages for slanderous words charged to have been spoken of him by the company's agents with its authority.

After the suit had been pending more than six months plaintiff abandoned his declaration and filed a substitute declaration in one count. The matters of inducement alleged were these: Plaintiff was licensed to do, and was doing, the business of investigating and adjusting insurance claims in Nashville under the name of the Insurance Adjustment Bureau. By reason of his having formerly worked for several insurance companies, he had acquired an extensive knowledge of insurance and had ascertained that the Metropolitan Life Insurance Company had outstanding many old lapsed insurance policies with cash surrender values not shown by the policies. Many holders of such policies had placed with him their

claims and he was undertaking to collect from defendant the cash surrender values for the policyholders. On this account the defendant took a very hostile attitude toward him, and undertook by slanders to destroy his business, character and reputation. The part of the declaration charging the slanders was as follows:

"Now, in order to beat down, destroy and put out of business the plaintiff and to keep the public from being informed that these old lapsed policies do have a value, the Metropolitan Life Insurance Company, through its representatives, J. I. Lasky, H. G. Bland, acting within the scope of their authority, have, on many and different occasions, falsely and maliciously charged the plaintiff of larceny, stating that he was a thief, a robber, a crook, that he was operating a racket; further that he was crazy and that if they let him collect their money for them they would not get anything from him, that he would take it all and they would get nothing, and further, that he was in the chain gang, that they had padlocked his door, and closed up his business and that they were going to put him in the penitentiary; and, in particular on or about the 15th day of April, 1939, the defendant, by its agent, H. G. Bland, falsely and maliciously stated to one Della Dickerson and her husband, James Dickerson, that the plaintiff was a crook, that he was robbing the public, and that he would take all the money and give them nothing, and that he was running a racket, that he was a crazy dog, that he was in the chain gang, that they were going to put him out of business and put him in the penitentiary where he belonged; and on many prior and subsequent occasions the defendant had falsely and maliciously repeated these same statements through its agents, to many other people with whom the plaintiff has had business

dealings, all these statements were made with the intention to, and calculated to do, and has resulted in, irreparable damages to the plaintiff's business and reputation, and has caused and resulted in mental anguish, strained and unfriendly relations with many of the persons with whom he has dealings. The conduct and actions and false and malicious statements of the said defendant, through its agents, concerning and about the plaintiff, has alienated the people with whom he has had business relations and the public in general."

Defendant demurred upon the grounds, among others, that plaintiff's alleged business constituted unlawful practice of law, and that the alleged slanderous words were not set out with enough particularity. The demurrer was overruled, with leave to rely on it at the hearing. Defendant then filed a plea of not guilty. After a trial lasting 18 days there was a verdict and judgment in favor of defendant. Plaintiff appealed in error, and seeks a reversal and a new trial upon numerous grounds.

Seven of the assignments of error (1st to 6th inclusive and 8th) all complain of matters allowed upon the cross-examination of plaintiff, which, for the most part, were instances or details of his prior conduct. Though his counsel objected to going into them, plaintiff himself volunteered many details and amplified them much beyond what was called for by the questions asked him. The trial judge admitted these matters as evidence of the truth of "the alleged charge of insanity of plaintiff" in mitigation of damages. While they took up a large part of the cross-examination of plaintiff, they may be briefly summarized as follows:

In 1936 plaintiff brought a suit against the Metro-Goldwyn-Mayer Corporation in Los Angeles, California,

for $500,000 damages for alleged assault and battery, false arrest and false imprisonment. He had gone, he said, to California in December 1935, with letters from President and Mrs. Roosevelt, Secretary of State Hull, and others of like note, to reform the moving picture business. Almost as soon as he arrived, agents and officers of the Metro-Goldwyn-Mayer Corporation asked him to leave the state. He refused and told them he would have to go on with his work. They arrested him, took his papers, beat him, fractured his jaw, and illegally imprisoned him. His declaration in that suit, after setting out these things, alleged that the agents and officers of the Metro-Goldwyn-Mayer Corporation told his wife that he was ''insane, dangerous, and a menace'' to her and their small child, and would have to be ''confined in a padded cell.''

When these agents released him, he and his wife and child started back to their home in Nashville in his automobile. When they reached New Mexico, due to his injuries and the infection in his broken jaw, he became unconscious. His wife deserted him, taking the child; and he was adjudged insane and committed to the New Mexico Insane Asylum. His trouble was diagnosed as ''Dementia Precox'' (Tr. pp. 872, 873). He later escaped, was brought back, and underwent horrible punishment. After being in the insane asylum for about six months, or until May 1936, he was released as improved.

He brought a suit in 1939 against the Interstate Life Insurance Company for $5,000 for assault and battery; and in 1941 he sued Hugh Freeman, Circuit Court Clerk of Davidson County, for $50,000 for willful failure to perform his duties as clerk.

When plaintiff was released from the New Mexico Insane Asylum and returned to Nashville, he was served with process in a suit brought by his wife for divorce and custody of their child. She had alleged that he had failed to provide for her, threatened to kill her, was dangerous, and should not be permitted to come about her or the child; and he was enjoined from coming about them. That suit was heard by the Honorable A. B. Neil, then Judge of the Second Circuit Court, now a Justice of the Supreme Court of Tennessee. He granted the wife a divorce and awarded her custody of the child.

Plaintiff was in Vanderbilt Hospital for a month or so in 1938. There, he said, they seemed to think "I would commit suicide"; and they put him in a strong room with bars on the windows. In this connection he stated many matters which were not called for by any questions put to him.

He labored under the idea that the decree granting the divorce and custody of the child to his wife was "an injustice" and "an insult" to him. He, however, did not appeal from that decree. But over a period of more than a year he continued to call Judge Neil at home on the telephone at night, and continued to write him scurrilous, denunciatory and insulting letters. Many of these letters were sent up. A reading of them reveals that plaintiff was convinced that his wife had conspired with many persons, including the agents of Metro-Goldwyn-Mayer Corporation, to break his mind and health, to take his child, and to kill him; and he also had the illusion that Judge Neil himself was one of the conspirators. In one of these letters to Judge Neil, written by plaintiff November 8, 1938 (Exhibit 26, cross-examination of Lackey), he said that the Judge was "low compared to kidnappers

for a price"; that "your kind should be marched before a firing squad without a hearing or literally shot down on sight without warning." He also said that he would have already done that if he had had a "weak spot" in his mind or if he "had not been a Christian man." But he added that in the future he was not going "to be as kind to people over and over that try wilfully to kill me as I have in the past." Then followed this: "I do say that I stand in a position of Justifiable homicide and I have for a long time and I intend to protect my own life in the future and my rights as a free man and my rights under the law and have my rights as any other man, if the courts cannot and will not give it, then at the price of bloodshed if it must be forced upon me." He further stated: "I have gotten my limit under the present standing of things as you and others forced it upon me while I was an invalid and have tried in every way possible to keep me one and finish my mind and health. My health is good now and I have passed all danger of you insane criminals breaking it and I am not going to be intimidated any longer and if you know when reason has become exhausted or is calculated to do so you will begin along with your same kind to begin to use a little yourself." And he closed thus: "You can use or take this letter in any way you see fit, but you and your kind are the scum of the earth and this letter has long been past due all of you. Do anything you desire to do. (Signed) Isaac Lunsford Lackey."

The Davidson County Grand Jury indicted plaintiff on a charge of violating Code, section 10806, in that he had continued to send threatening letters to Judge Neil. On October 26, 1939, plaintiff signed an affidavit in the criminal court, asking that that case be continued and

retired from the docket, promising not to write Judge Neil any more letters, not to telephone him or his family, and not to threaten, molest or annoy him or them any further.

Counsel for plaintiff argue that the above matters were inadmissible and were highly prejudicial to a fair consideration of his case by the jury. They were no doubt quite damaging to his chance of success; but they were not to be excluded on that account, if they were material to the issues and admissible under the law. The common law rule, which formerly prevailed in Tennessee, was that in an action for libel or slander the defendant could not, under the general issue, give in evidence the truth of the defamatory words, or any matter tending to prove their truth, either in bar of the action or in mitigation of the damages. McCampbell v. Thornburgh, 40 Tenn. (3 Head), 109; Shirley v. Keathy, 44 Tenn. (4 Cold.), 29; Hackett v. Brown, 49 Tenn. (2 Heisk.), 264; Bank v. Bowdre Bros., 92 Tenn. 723, 23 S. W. 131. But that rule has now been changed by statute. Chapter 22, Acts of 1917, Code, sec. 9311, provides: "In all civil actions for slander or libel the truth of the words spoken or written and the circumstances under which they were spoken or written may be given in evidence under the general issue in mitigation of damages."

While this statute does not enable the defendant, under the general issue, to prove the truth of the words as a bar to the action (Hartsell v. Depew, 10 Tenn. App. 141), it does enable him, for the purpose of reducing the damages, to prove not only the truth of the words but also the circumstances under which they were spoken or written. He may now, under the general issue, deny the speaking or publication of the words, and at the same

time prove their truth to mitigate the damages. Any evidence tending to prove the truth of the words, or a substantial part of them, is relevant and admissible on the question of damages.

Among the words sued for were those charging that plaintiff was "crazy," or imputing insanity to him. They were alleged to have been spoken of him in his business, and, therefore, were slanderous, if false. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810. The truth of these words, if pleaded and proved, would have been a bar to a recovery for them. Without a plea of justification and under the general issue, the defendant had the right by Code section 9311 to give in evidence the truth of these words to reduce the damages. Any evidence tending to prove the truth of them was material and admissible; and defendant had the right to adduce such evidence either by its own witnesses or by cross-examination of plaintiff himself. We think the matters above complained of tended to evidence the truth of the words imputing insanity to him, and were material and admissible on the question of damages. Insanity can ordinarily be shown only by behavior, words and acts, of the person in question. The above matters were the same sort which a psychiatrist would have sought to enable him to diagnose plaintiff's condition and determine whether he was still insane, as he was adjudged to be in 1935 in New Mexico. If he was, this was an important fact which defendant was entitled to have the jury take into consideration in fixing the damages claimed by plaintiff.

We also think the above matters were proper as cross-examination to affect plaintiff's credibility as a witness. He had testified in chief as to the character and

extent of his business, the oppressive conduct of defendant's agents toward him in his efforts to deal with them, the injurious effects of the slanders upon his business, the harm to his reputation, the mental anguish he had suffered, and many other matters in issue. While it was not proper to cross-examine him as to particular acts to reflect upon his character to reduce the damages (Theodore v. Daily Mirror, 282 N. Y. 345, 26 N. E. (2d) 286; 130 A. L. R. 853; Annotation, 130 A. L. R. 854), it was proper to cross-examine him as to such acts to affect his credibility as a witness. Hobbs v. Tinling & Co., Ltd., [1929] 2 K. B. 1-54; see, also, Zanone v. State, 97 Tenn. 101, 36 S. W. 711, 35 L. R. A. 556; Powers v. State, 117 Tenn. 363, 379, 97 S. W. 815, 819. A witness may be cross-examined not only to show that he lacks the disposition to tell the truth but also to show that he wants the capacity to do so. We think the above matters brought out on the cross-examination of plaintiff were relevant and admissible and were proper to be considered by the jury to enable them to determine whether he had really suffered the wrongs and injuries and damages at the hands of defendant which he testified he had suffered, or whether he was suffering from a persecution complex and the things he testified to were only delusions or hallucinations of a frenzied or disordered mind.

The seventh assignment complains that the trial judge held that the declaration stated only one cause of action—the one for the slanderous words alleged to have been spoken of plaintiff by defendant's agent Bland to Della and James Dickerson on or about April 15, 1939. Plaintiff sought to prove numerous other causes for other slanders of him by other agents of defendant; and he called over sixty witnesses to testify to as many other

slanders. Upon defendant's objection, the trial judge ruled that such other causes were not sufficiently averred in the declaration, that the only one sufficiently alleged was the one for Bland's statements to the Dickersons, and that the evidence as to the other slanders was admissible only to aid in proving that one cause—to corroborate the witnesses Della and James Dickerson (Tr., p. 252) and to show malice on the part of defendant; and the judge charged the jury that if they found that Bland made the statements to Della and James Dickerson as alleged, then they might consider the evidence as to the other slanders in determining "whether or not defendant was actuated by a malevolent design to injure plaintiff and destroy his business" (Tr., p. 880).

Counsel for plaintiff contend that the other causes were adequately averred and the evidence offered to prove them should have been received for that purpose and not merely to help make out the one cause for Bland's statement to the Dickersons; that the jury should not have been thus limited to finding whether that one had been proved, but should have been permitted to find for plaintiff upon any or all of the other causes for the numerous other slanders testified to by the other witnesses; and that the effect of the court's ruling was altogether to deny him the right to recover for any of the many other slanders, though they were proved to the entire satisfaction of the jury.

It is true each publication of libelous or slanderous words is a distinct wrong for which a separate action will lie; and a recovery for one is no bar to an action for another publication. Underwood v. Smith, 93 Tenn. 687, 27 S. W. 1008, 42 Am. St. Rep. 946. So one defamed by another in several different conversations has

a distinct cause of action for each of such conversations; and he may prosecute each cause separately or join all of them by different counts in one action. Code, sec. 8740; Newell on Slander and Libel (4th Ed.), 336; 33 Am. Jur., pp. 212, 213, sec. 234. But in any case his right of recovery is limited to the words sued for and set out in his declaration. Though he may recover only for the slander declared upon, many courts allow him to prove other slanders to show malice of defendant in uttering that one. 33 Am. Jur., p. 253, sec. 269; Annotations, 12 A. L. R. 1026, 86 A. L. R. 1297. But the rule in Tennessee is that evidence of other slanders is not admissible unless it is an explanation or confession of the one declared upon, contains an admission of malicious intent in that one, or reflects upon the credibility of defendant as a witness. Howell v. Cheatham, 3 Tenn. (Cooke), 247; Witcher v. Richmond, 27 Tenn. (8 Humph.), 473; Saunders v. Baxter, 53 Tenn. (6 Heisk.), 369; Robinson v. Baker, 78 Tenn. (10 Lea), 402; Russell v. Farrell v. Farrell, 102 Tenn. 248, 52 S. W. 146; Bynum v. Miller, 136 Tenn. 593, 191 S. W. 128.

Plaintiff did not declare on the numerous slanders by separate counts, as would have been proper. His declaration contained only one count. If it stated more than one cause of action, it was bad for duplicity. But that was a formal, and not a substantial, defect, which was waived, not having been taken advantage of by motion to strike. Code, sec. 8727; Waggoner v. White, 58 Tenn. (11 Heisk.), 741; Grizzard v. O'Neill, 15 Tenn. App. 395, 401, 402. So the question is whether this one count stated the many distinct causes on which plaintiff sought to recover; whether, tested by the requirements of the law of pleading in actions for defamation, this

count was sufficient in averments of the numerous slanders to state a cause for each of them.

At common law great strictness and formality were required of pleadings in an action for libel or slander. In such an action the declaration was required to have the same degree of certainty as an indictment. As is well known, the formal requisites of the declaration were: (1) the inducement, or introductory statement of the circumstances under which the words were used, and the extrinsic matter necessary to show that they are actionable; (2) the colloquium, or statement that the words were spoken or written "of and concerning the plaintiff" and had reference to the extrinsic matter alleged; (3) the statement of the words themselves and of their publication; (4) the innuendo, or explanation of the meaning of the words in the light of the extrinsic matter stated in the inducement; and (5) the consequent damages. A declaration lacking these requisites was bad on demurrer and often so in arrest of judgment. Where it failed to quote the defamatory words and set them out in haec verba, the declaration was fatally defective, and judgment thereon would be arrested. Shipman on Common-law Pleading (3d Ed.), 219; Stephen on Pleading (9 Am. Ed. by Heard), star page 391. In Chitty on Pleading (12 Am. Ed.) it is said (Vol. 1, p. 404):

"3dly. Great care must be taken in setting out the particular libellous matters or words complained of. The libel itself, or slanderous words, must be set out in haec verba; and the declaration must profess so to set forth the matter; and an averment that the libelous or slanderous matter was 'to the effect following;' or 'in substance as follows,' setting out the libel or words, would be bad in arrest of judgment although the words themselves be set

out. It is not sufficient to declare generally that the defendant published a libel concerning the plaintiff in his trade, 'purporting that his beer was of a bad quality, and sold in deficient measure;' or that the defendant 'charged and arrested (asserted), and accused the plaintiff, a tradesman, of being insolvent.' The libel or slander itself ought to be expressly stated. . . ."

And the author goes on to say: "The slanderous words should be stated as they were uttered; and proof of words spoken in the third person will not support a count for words spoken in the second, and vice versa; nor will words spoken by way of interrogation support a charge of words spoken affirmatively" (p. 405).

One of the authorities cited for the above statements is Cook v. Cox, 1814, 3 Maule & S. 110, 105 Eng. Reprint 552, 9 Eng. Rul. Cas. 89, in which the declaration alleged that the defendant "charged, and asserted, and accused plaintiff (a tradesman) of being in insolvent circumstances," and stated special damage. It was held bad because it did not set out the words in haec verba; and judgment was arrested. After referring to the rule that the words must be so set out in indictment, Lord Ellenborough, C. J., said: "There seems to be no reason for any difference in this respect between civil and criminal cases, the action arises ex delicto."

And in accord with the rule above stated, it is held in Tennessee that the words must be proved strictly as alleged; where the proof is of equivalent words or words of similar import, or of words spoken interrogatively when they were alleged to have been spoken affirmatively, the variance is fatal. Roberts v. Lamb, 93 Tenn. 343, 27 S. W. 668; Cohen v. Pinson, 1 Tenn. Civ. App. (1 Higgins), 93; Beasley v. Hills, 1 Tenn. Civ. App. (1 Higgins),

285. In the latter case Judge Hughes, upon the authority of Starkie on Slander, said: "If the slander be contained in words of interrogation, it must be so laid, and must not be averred to have been spoken affirmatively." 1 Tenn. Civ. App. (1 Higgins), 299.

The reasons for the rule that the words must be set out verbatim are that the court may know exactly what the words were so as to be able to judge whether they are actionable; that the defendant may know what he is called on to meet and how to shape his defense, whether by demurring, denying, or justifying; and that the judgment may be so certain that it may be pleaded in bar of another action for the same cause. Wright v. Clements, 1820, 3 B. & Ald. 503, 5 E. C. L. 358, 106 Eng. Reprint 746; Wood v. Brown, 1815, 6 Taunt. 169, 1 Marsh. 522, 1 E. C. L. 347, 128 Eng. Reprint 998; Cook v. Cox, 1814, 3 Maule & S. 110, 105 Eng. Reprint 552, 9 Eng. Rul. Cas. 89; see, also, cases cited in Note, 9 Ann. Cas. 495.

This rule has survived modern changes in the law of pleading; and it is now the law in England and in most of the States of the Union that the declaration or complaint must set out the words in haec verba. Gatley on Libel and Slander (3d Ed.), 499; 33 Am. Jur., pp. 214, 215, sec. 237; 37 C. J., p. 26, sec. 334; Annotation, 9 Eng. Rul. Cas. 95, 96. In the Annotation in 9 Ann. Cas. 495, it is said: "The rule laid down in the reported case, to the effect that in an action for libel or slander the exact language of the alleged defamatory statement must be set out in the complaint, obtains in the majority of jurisdictions. According to this rule, it is insufficient to plead the alleged defamatory matter according to its substance and effect, but it must be set out in haec verba" (citing numerous cases).

One of the cases cited was State v. Brownlow (1856), 26 Tenn. (7 Humph.), 63, which held an indictment bad because it set out merely the substance of the libel, and not the words themselves. While that was a criminal case, it was decided upon the rule applied in civil cases, without any indication that it called for a different rule; and one of the authorities for the decision was Wright v. Clements, supra. In the latter case the declaration averred that defendant published of plaintiff a libel "in substance as follows" and then set forth the words of the libel. It was held that the phrase "in substance as follows" limited the subsequent words and indicated that merely the substance of the libel was set out, and not the words themselves; and the declaration was adjudged bad in arrest of judgment. Judge Turley quoted from that case (26 Tenn. (7 Humph.), 64): " 'in actions for libel the law requires the very words of the libel to be set out in the declaration, in order that the court may judge whether they constitute a ground of action.' More authorities might be cited to this point were it necessary, but it is incontrovertible." Cf. State v. Smith, 75 Tenn. (7 Lea), 249.

It is true our statutes have undertaken to simplify pleading and to do away with the formality and technicality that prevailed at common law. They provide that a pleading shall state only material facts, briefly and without argument or inference, and a pleading is sufficient when it conveys a reasonable certainty of meaning and, by a fair and natural construction, shows a substantial cause of action or defense (Code of 1932, secs. 8726, 8729); and that the declaration shall state the plaintiff's cause of action; it may contain several statements or counts; but where several distinct causes of action against

the same party are joined, the court may direct separate trials of the issues (id., sec. 8740). Section 8741 is in these words: "It is sufficient to state in the declaration in slander or libel that the defendant falsely and maliciously charged the plaintiff with perjury, larceny, or other crime, as the case may be, in substance as follows [setting it out]."

These statutes, however, did not abolish our system of common-law pleading; their intent was merely to simplify it and relieve it of formality and technicality; but they did not change the rule that a declaration for slander or libel must set out the defamatory language in haec verba. That is a matter of substance, not a mere formality or technicality. To state a cause of action, the declaration must set out the words and aver such extrinsic matter as may be necessary to show that they are actionable. Section 8741, above quoted, applies only to a particular class of slanders and libels—imputations of crime, which are actionable per se, or without averment of any extrinsic matter; and in this class this section requires that the declaration set out the defamatory language, "it" in the phrase, "setting it out," meaning the defamatory language. Such was its meaning when it was first enacted in section 2897 of the Code of 1858 (see forms of declarations for slander and libel, nos. 20, 21, sec. 2939 of the Code of 1858); and section 2897 of that Code was re-enacted without change as section 8741 of the Code of 1932. So a declaration for slander or libel, either of the class referred to in that section or of any other class, must, in order to state a cause of action, set out verbatim the defamatory words. Such has been the practice, as shown by reported cases, and such is the opinion expressed by text-writers on the subject of plead-

ing in this state. Caruther's History of a Law Suit (5th Ed.), 143-146 (6th Ed.), 147-151; Morrison on Tennessee Pleading and Forms, 7, 315-323; Tennessee Procedure in Law Cases, by Higgins and Crownover, 978-984. The words must be alleged as they were uttered and proved as alleged, and not by proof of equivalent words or words of similar import. Roberts v. Lamb, 93 Tenn. 343, 27 S. W. 668; Cohen v. Pinson, 1 Tenn. Civ. App. (1 Higgins), 93; Beasley v. Hills, 1 Tenn. Civ. App. (1 Higgins), 285.

■■  Under this rule, we think plaintiff's declaration was insufficient to state a cause of action for any of the numerous other slanders complained of; and the trial judge correctly so held. From the excerpt above quoted, which was all the declaration stated as to such slanders, we have seen that it did not quote or set out the words of any agent of defendant, and did not profess to do so. By way of indirect discourse and in most general averments, the declaration merely stated that defendant's agents, Laskey and Bland, have on many different occasions falsely and maliciously charged plaintiff of larceny, stating that he was a thief, a robber, a crook, was operating a racket, was crazy, etc. Thus the words set out were the words, not of the agents, but of the pleader himself and were manifestly but his own conclusions of what was the effect of what was said by the different agents on the many different occasions. Such a general, vague, and loose mode of pleading, as we have seen, is almost universally held insufficient to state a cause of action for libel or slander; and such a declaration is bad, not only on demurrer but also in arrest of judgment. So the trial judge did not err against plaintiff in holding that he could not recover for the other slanders,

and that the evidence of them was admissible only to aid in proof of the cause of action for the alleged conversation of Bland with the Dickersons. The propriety of the ruling that the declaration stated a cause of action for that conversation is not before us. But in admitting the evidence of other slanders to help make out that cause, the trial judge gave plaintiff as much as he was entitled to and perhaps more than was warranted by Bynum v. Miller, 136 Tenn. 593, 191 S. W. 128, and like cases.

■ Plaintiff's ninth assignment is that the trial judge should not have allowed character witnesses to be called for the witnesses Laskey and Bland. They had denied uttering any slanderous statements of plaintiff, their testimony was in conflict with that of witnesses for plaintiff, and they had been closely cross-examined. This was such an attack upon them as justified the calling of character witnesses for them. Hill v. State, 159 Tenn. 297, 304, 17 S. W. (2d) 913, 915.

■ ■ The tenth assignment is that the verdict was based upon prejudice, passion, or caprice. It fails to point out any specific error of fact or law and it is therefore too general and indefinite to raise any question in this Court. Rule 11, Williams' Code, Vol. 7, p. 546. Moreover, the matters argued to support this assignment are without merit. They are but the same objections to the cross-examination of plaintiff which have been considered above, and a complaint that one of defendant's counsel made improper argument before the jury. No objection to this is shown to have been made at the time, and there is nothing about it in the bill of exceptions except what is asserted in plaintiff's motion for a new trial. This motion, being only a pleading and its statements merely the unsupported assertions of the pleader, is not

sufficient evidence that the things complained of occurred, and we cannot consider them. Sherman v. State, 125 Tenn. 19, 47-53, 140 S. W. 209, 216-218; Tallent et al. v. Fox, 24 Tenn. App. 96, 105, 141 S. W. (2d) 485, 491, and cases there cited.

Assignment No. X-I complains that the trial judge should have charged the jury that the truth of the slanderous words went only in mitigation of damages and was not a defense and that the jury, if they believed such words had been uttered, should find for plaintiff in some amount. The judge did charge the jury that the truth of the alleged slanderous statements was not a defense and could only be considered in mitigation of damages (Tr., p. 880).

The eleventh assignment complains of the judge's charge, but it does not quote or set out any part of the charge. Rule 11(3) of this Court provides: "When the error alleged is upon the charge of the court, the part complained of, whether it be instructions given or instructions refused, shall be set out." Williams' Code, Vol. 7, p. 546. This assignment is therefore insufficient. Shook v. Simmons, 23 Tenn. App. 685, 688, 689, 137 S. W. (2d) 332, 334.

The twelfth assignment is: "The verdict of the jury is in excess of the evidence and the law applicable thereto." This assignment is too general and indefinite to be considered. Rule 11, Williams' Code, Vol. 7, p. 546. There is no thirteenth assignment. The fourteenth is: "All the evidence supports the insistence of the plaintiff." This is likewise too general to be considered. Plaintiff's brief does not set out his fifteenth assignment, but under the heading "Assignment XIV and XV" there are some fifty pages of argument upon the weight of the evidence.

We cannot consider such an argument. Nothing is better settled, or more often applied, than the rule which prevents us from disturbing a verdict, supported by material evidence, upon the issue of the credibility of witnesses.

All of the assignments of error are overruled. The judgment of the circuit court is affirmed, and the costs of the appeal in error are adjudged against plaintiff and the surety on his appeal bond.

Howell and Hickerson, JJ., concur.