**June R. BUCHANAN, Plaintiff/Appellant,**

**v.**

**Daniel L. HARRIS, Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 8, 1995.

Application for Permission to Appeal
Denied by Supreme Court
July 3, 1995.

Scott Daniel, Murfreesboro, for appellant.

John B. Allyn, Burson, Allyn & Martin, Nashville, for appellee.

## OPINION

TODD, Presiding Judge.

The plaintiff, June R. Buchanan, has appealed from a jury verdict and judgment awarding her $4,600 for personal injuries and property damage sustained in a motor vehicle collision. The Trial Judge also awarded her an additional $1,722 for discretionary costs.

Plaintiff presents three issues, numbered I, II and IV, as follows:

I. The verdict is so inadequate and contrary to the evidence and against the weight of the evidence as to evidence passion, prejudice and caprice, and the court erred in denying plaintiff's motion for new trial and/or additur.

II. The court erred and denied plaintiff a fair trial by excluding Doctor Arendall's testimony as to the permanence of plaintiff's injuries thereby preventing plaintiff from obtaining an award for the full extent of her injuries.

IV. The court erred and denied plaintiff a fair trial by allowing defendant over objection to cross-examine plaintiff concerning irrelevant collateral and unduly prejudicial matters contained in job applications filled out by plaintiff long before plaintiff's present injury ever occurred.

It is uncontroverted that, on August 15, 1988, defendant was the operator of a vehicle which collided with the rear of a vehicle occupied by plaintiff. Liability was admitted, and the only issue was the amount of damages to be awarded.

Plaintiff testified that the collision reduced the value of her vehicle by $800. However, the extent and nature of the damages were not shown; and there was no evidence of expense of repairs, although plaintiff drove the vehicle for five years after the collision.

Defendant testified that the only damage to his vehicle was a broken plastic grill and right headlight casing.

Defendant and the investigating officer testified that, at the scene of the collision, plaintiff complained of no personal injury.

Plaintiff drove her vehicle home from the scene and worked the following day. Howev-

er, she saw a physician after work the following day, complaining of neck and back pain. The physician prescribed muscle relaxants and placed no restrictions on her activities.

On September 2, 1988, two weeks later, plaintiff again saw her doctor, complaining of neck and back pain and headaches. Plaintiff's physician referred her to a neurosurgeon whose tests were negative. Plaintiff told the neurosurgeon she had no previous spine or back injury.

Plaintiff admitted that she collected compensation for a low back injury in 1980 and that she withheld this information from the neurosurgeon.

Plaintiff was referred to a second neurosurgeon who saw her once and prescribed medication, but she failed to return for further treatment as directed.

Plaintiff testified of sensitivity to loud noise and pain upon looking up or down, bending, stooping or lifting.

After the collision she worked at a day care center for two, three and four year olds, where she had no physical problems.

Thereafter, she obtained temporary employment through an agency. On her application to that agency, she denied ever having any sprain, strain, back or eye problem, head injury or other disability. She admitted that she falsified the application.

Thereafter she applied to Trinidad Benham for work representing that she had no physical disabilities to interfere with her employment and was hired. She admitted the application was false.

Plaintiff admitted that she submitted false applications to other employers, both before and after the collision involving defendant.

In support of her claim, plaintiff testified that she was treated for two years and eight months for severe headaches, numbness in her extremities and neck pain; that she was earning $212 per week when injured; that she was unable to work for nineteen weeks and was terminated for this reason.

She further testified that her neck and head pain continued to the time of trial (December 14, 1993); that she suffered depression and was unable to do any work that required certain positions of the head.

Plaintiff introduced evidence of $4,099 medical expenses.

Defendant offered no contradictory evidence except cross-examination of plaintiff and her witnesses.

From the above, it is evident that the jury heard evidence which, if believed, would justify a much larger verdict than that which was rendered. It is also evident that the jury heard evidence impeaching the weight and credibility of plaintiff's testimony. It is likewise evident that the jury heard impeachment of the factual bases of the opinions expressed by her medical witnesses.

■ If a jury finds that a witness has testified falsely as to a material issue in the case, the jury is justified in disregarding all of the testimony of that witness if it sees fit to do so. *Tenn. Cent. R. Co. v. Morgan,* 132 Tenn. 1, 175 S.W. 1148 (1915); *Buck v. West,* 58 Tenn.App. 539, 434 S.W.2d 616 (1968).

In matters involving subjective symptoms which physicians are unable to clinically corroborate, the jury is heavily dependent upon the credibility, objectivity and weight of the testimony of the injured party.

■ A witness may be cross examined, not only to show his lack of disposition to tell the truth, but also to show want of capacity to tell the truth. *Lackey v. Metro. Life Ins. Co.,* 26 Tenn.App. 564, 174 S.W.2d 575 (1943).

In the present case, the jury did not utterly reject the testimony of plaintiff. Their award was sufficient to include some allowance for property damage, medical expenses, pain and disability. Admittedly, the award was meager, but it represented the evaluation of plaintiff's damages in the light of her own impeaching admissions. In short, the jury concluded that plaintiff exaggerated her injuries and undertook to compensate what appeared to them to be credible.

**944**

In so doing, the jury acted within their proper province. In personal injury cases, the amount of damages is primarily for the determination of the jury, and next to the jury the most competent person to pass upon the issue is the Trial Judge. *Transports, Inc. v. Perry*, 220 Tenn. 57, 414 S.W.2d 1 (1967); *Owen v. Locke,* Tenn.App., 650 S.W.2d 51 (1983).

The amount of damages is primarily a question for the jury whose verdict, approved by the Trial Judge, is entitled to great weight in the Court of Appeals. *D.M. Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947); *Jones v. Cocke County,* 61 Tenn. App. 555, 456 S.W.2d 665 (1970).

Nothing in this record reflects passion, prejudice or unaccountable caprice on the part of the jury.

This Court has no authority to review the failure of the Trial Judge to suggest an additur. *Loftis v. Finch,* Tenn.App., 491 S.W.2d 370 (1972).

This Court has no authority to suggest an additur. T.C.A. § 20–10–101.

No ground of reversal is presented by plaintiff's first issue.

Plaintiff's second issue complains of the exclusion of a portion of the deposition of Dr. Rex Arendall. However, plaintiff's brief fails to cite the page of the record where this ruling of the Trial Court is recorded as required by Rule 6 of the Rules of this Court.

On pages 8, 9, 19 and 20 of Dr. Arendall's deposition is found the following:

Q. And, Doctor, assuming that this lady continued to have headaches, neck pain, that she was referred by Dr. Carter in April of '91 to Dr. Hoos, a neurologist, for continued problems in that regard and that she says that she is still having headache and neck pain to the present, what is your opinion as to the prognosis for this lady?

Mr. Allyn: I object. It calls upon the witness to speculate. I object to the form of the question.

Mr. Daniel: What is the objection to the form? What is wrong with the form of it?

Mr. Allyn: It is for you to rephrase the question.

Mr. Daniel: How do you want me to rephrase it? What is wrong with it?

Mr. Allyn: I am not Ms. Buchanan's lawyer. You are. Rephrase the question properly.

Mr. Daniel: Doctor, go ahead and answer the question.

By the Witness:

A. My understanding of the question, my answer would be that if she had symptoms lasting more than six months, I think they would be permanent symptoms.

Q. And is that to a reasonable degree of medical certainty?

A. Yes.

. . . .

Q. All right. Doctor, he asked you if your opinion as to her current condition would be speculative because you haven't seen her; but assuming that the condition was as stated in the hypothetical question that I asked you earlier, that is, that she is still having headaches following that accident for a period of more than six months afterwards, assuming that is accurate, would that be speculative to give a prognosis as to her long-term effect?

Mr. Allyn: Object to the leading.

By the Witness:

A. Things that last over six months in general are permanent, the complaints of head and neck pain.

. . . .

A. I would think her symptoms would be permanent.

Q. To what degree of medical certainty do you make that statement?

A. Within a reasonable degree of medical certainty, if it lasts more than six months,

I was taught that it is a permanent condition.

The transcript reflects the following at the opening of the trial:

Mr. Daniel: Judge, in view of Your Honor's ruling—and I want to make sure that I understand the ruling yesterday about the—Dr. Arendall's testimony of permanence on the—

The Court: Knock that out.

Mr. Daniel: —You've said we cannot—cannot read his testimony—

The Court: Not as to the permanence. I think it's too speculative.

T.R.E. Rules 702 and 703 provide:

**Rule 702. Testimony by experts.**—If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

**Rule 703. Bases of opinion testimony by experts.**—The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion of inference if the underlying facts or data indicate lack of trustworthiness.

The question was based upon a hypothetical or assumed set of facts. The Trial Judge evidently concluded that the proposed facts were not sufficient to support an opinion of any value. Moreover, the statement that the opinion was based upon "what I was taught" renders it less responsible and valuable.

■ The qualifications, admissibility, relevancy and competency of expert testimony are matters which rest within the sound discretion of the Trial Court which may not be overturned unless the discretion is arbitrarily exercised. *State v. Ballard*, Tenn., 855 S.W.2d 557 (1993). It does not appear that such discretion was arbitrarily exercised in the present case.

■ Moreover, plaintiff's two other medical witnesses testified without contradiction that the symptoms of which she complained could be expected to continue indefinitely. Therefore, the excluded testimony of Dr. Arendall was cumulative and subject to exclusion for this reason. Also, in the light of the entire record and the verdict of the jury, the exclusion complained of was harmless and not reversible. T.R.A.P. Rule 36(b).

No reversible error is found in plaintiff's second issue.

■ Plaintiff's third issue (numbered IV) complains of the ruling of the Trial Court upon plaintiff's pre-trial motion to prevent introduction of certain evidence of job applications made by plaintiff. The relevant part of the motion was as follows:

(3) Plaintiff moves the court to prohibit the defendant from introducing or making any reference to plaintiff's job application with Arrow Industries in 1982 in which plaintiff denied that she had any back injury. Plaintiff had, in fact, been injured in her workers compensation claim and gave several answers which were inaccurate. These were not under oath, and are collateral to any issues at the present as plaintiff readily admits and acknowledges that she, in fact, did have the prior injury. The fact that she, in order to obtain employment, denied injury at that time would serve no legitimate function in this cause and would serve only to attempt to impeach on a collateral matter and would be unduly prejudicial and irrelevant. This matter is covered at page 26 through page 28 of plaintiff's discovery deposition.

The ruling of the Trial Court on this part of the motion was:

7. Plaintiff's motion to prohibit the defendant from introducing or making any ref-

erence to plaintiff's job application with Arrow Industries in 1982 and further verbal motion to prohibit the defendant from cross-examining plaintiff concerning statements made on any prior job applications, on the grounds that they were irrelevant, unduly prejudicial, and collateral to the issues, was objected to by defendant and the court denied plaintiff's motion and ruled that these matters [were] related to plaintiff's credibility and thus were not collateral or irrelevant to the issues and that the probative value allowing cross-examination on these matters outweighed any prejudicial effect thereof, and the court thereby denied plaintiff's motion and instructed counsel that it could cross-examine plaintiff on her prior job applications and could introduce the written job application documents as exhibits at the trial for the purpose of impeaching her credibility based upon any false or untrue statements contained therein.

Plaintiff asserts that a job application in 1982 was irrelevant to the damages she should receive for injuries sustained in 1988. Since the application stated no disabilities, this contention is correct. However, plaintiff's admitted untruthfulness on any occasion is relevant to her credibility as a witness. She admitted that the application was untruthful, and her admitted untruthfulness was relevant to her credibility. This is especially true because plaintiff admitted to a consistent, long-standing and continued practice of untruthful applications to prospective employers.

This is not a case of prior inconsistent statements. This is a case of a witness who freely admitted to a pattern of lies and deceit. This is not impeachment of testimony, but self impeachment of the truthfulness of a witness by the admissions of the witness. T.R.E. Rule 608.

No reversible error is found in plaintiff's third (IV) and last issue.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against plaintiff. The cause is remanded to the Trial Court for such further proceedings as may be necessary and proper.

Affirmed and Remanded.

LEWIS, J., and LEE RUSSELL, Special Judge, concur.