IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2023 Session

**ESSY KAZEMI ET AL. v. HAMID ARAB**

**Appeal from the Chancery Court for Williamson County**
**No. 48508J   Deanna B. Johnson, Judge**

_____

**No. M2022-00707-COA-R3-CV**

_____

The Defendant signed a promissory note and borrowed $500,000 from the Plaintiffs, with the loan secured by his home.  Months later, the parties entered into a note modification agreement that increased the principal to $900,000.  The Defendant did not pay back the loan, making no payments, so the Plaintiffs sued to recover under the agreements.  Over two years after the original answer was filed, the Defendant moved to amend his answer to add several affirmative defenses.  The trial court denied the motion to amend.  After a trial, the trial court found that the Defendant owed the Plaintiffs $843,011.47.  The Defendant appeals the denial of his motion to amend and raises multiple other issues primarily relating to the amount owed.  We find no error and affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Brian F. Walthart, Brentwood, Tennessee, for the appellant, Hamid Arab.

J. Timothy Street, Franklin, Tennessee, for the appellees, Nasrin Kazemi and Essy Kazemi.

**OPINION**

I.

This case stems from a promissory note signed by the Defendant, Hamid Arab, to borrow funds from the Plaintiffs, Nasrin Kazemi and Essy Kazemi.  Mr. Arab is a general contractor who faced a financial setback in 2015.  The Kazemis agreed to loan Mr. Arab $500,000.  On October 20, 2015, Mr. Arab signed a promissory note (the Note).  Under the

Note's terms, the full balance and 10% interest were due one year later, on October 20, 2016. It included a 5% late-payment penalty and provided for attorney's fees and costs in the event of a default. The Note was secured by an interest in Mr. Arab's home in Brentwood, Tennessee.

During the term of the original Note, Mr. Arab needed even more money, so the parties agreed to modify the note. On February 18, 2016, the parties executed a note modification agreement (Modification). The Modification increased the loan from $500,000 to $900,000 and declared that, as of its signing, the outstanding principal loan amount of $500,000 was considered outstanding and due under the Note. The Modification, too, was secured by an interest in Mr. Arab's home. Testimony and evidence at trial showed that the Kazemis paid Mr. Arab a total of $850,000. The Kazemis assert that $50,000 was held back as the interest owed on the original Note, whereas Mr. Arab asserts the Kazemis failed to uphold the agreement to lend him the full amount.

Mr. Arab never made any payments on the Note or Modification. In December 2017, after the Note and Modification had matured, the Kazemis initiated foreclosure proceedings on Mr. Arab's home. To avoid Mr. Arab's potential bankruptcy, the parties agreed for Mr. Arab to convey the home to the Kazemis. In January 2017, Mr. Arab transferred title to the Kazemis. There were three encumbrances on the property at the time. To obtain clean title, Ms. Kazemi purchased the encumbrances. She paid $137,641 to pay a promissory note owned by First Advantage Bank, $164,921.72 to pay off a home equity line of credit (HELOC) from First Advantage Bank, and $389,651.57 to Wells Fargo. After clearing the encumbrances, the Kazemis worked to get the home ready to sell. They paid to repair the fireplace, remove debris from the driveway, and have the house cleaned. They also had to insure the property, pay taxes, pay HOA dues, and have the lawn maintained. The Kazemis paid $30,104 total to prepare the house for sale and ultimately a $42,000 real estate commission. In March 2019, the Kazemis sold the home for $1,400,349, netting $1,356,545.34 after taxes and fees.

In June 2019, the Kazemis brought suit against Mr. Arab seeking what they claimed to be owed under the Note and Modification, $650,588.88. They also sought attorney's fees, expenses, costs, and post-judgment interest. Mr. Arab timely filed an answer admitting that the Modification raised the loan amount from $500,000 to $900,000 and that the Note and Modification had matured, remaining unpaid. Discovery ensued.

Over two years after his initial answer, on September 15, 2021, Mr. Arab moved to amend his answer to add the defenses of usury, misrepresentation, and fraud. He originally set the hearing on the motion to amend on October 6, but the court informed him that the date was unavailable. He never reset the hearing.

The Kazemis filed a response to the motion, arguing that because the trial was set for December 2021 and the case had been pending since June 2019, they would be

prejudiced by the late inclusion of these defenses, which would require further discovery and preparation. Before the court issued any ruling on the motion to amend, Mr. Arab filed a motion for summary judgment based on the same defenses. That motion was heard on November 30, 2021. At the hearing, the court apparently informed Mr. Arab's counsel that the affirmative defenses of usury, misrepresentation, and fraud were not properly before the court because there had not been a hearing on the motion to amend.[1] Mr. Arab's counsel pivoted to an argument based on a lack of consideration, which the court similarly pointed out was not raised in the motion and could not be considered.

Promptly addressing the matter on December 2, 2021, the trial court entered a written order denying both the motion to amend and the motion for summary judgment. In its order, the court explained that the lawsuit was over two and half years old and the trial was set for December 17, which was just over two weeks away. The trial court found that the Kazemis would be prejudiced by the amendment, so the trial court denied the motion. As for the motion for summary judgment, the court denied that motion because the affirmative defenses it was based on were not properly raised in the pleadings and could not be considered. The court also stated that the lack of consideration argument was also raised for the first time at the hearing and could not be considered.

On December 13, 2021, the parties agreed to reset the trial for February 11, 2022. At trial, the court first heard testimony from Nasrin Kazemi. She testified that the parties originally contracted for $500,000. She explained that the modification raised the principal to $900,000, but the Kazemis loan would only be an additional $350,000 to Mr. Arab. According to Ms. Kazemi, $50,000 was to be held back as the accrued 10% interest on the original $500,000. On cross-examination, Ms. Kazemi was clear that the parties openly agreed to the holding back of $50,000 as the then-accrued interest. She also testified as to the process of selling the home and paying off the encumbrances. According to Ms. Kazemi, the interest continued to accrue through at least February 2019, adding up to a total owed balance of $1,215,130.78. Once the house was sold and the encumbrances paid off, the total less sales proceeds was $622,088.88. When adding post-sale interest of $181,442.59, the total owed by Mr. Arab was, at least according to Ms. Kazemi, $803,531.47. In total, she testified that there were 868 days between the maturity of the Note and the sale of the home.

Mr. Arab testified that he never agreed to pay $50,000 in the manner described by Ms. Kazemi. He stated that he was supposed to be lent the full $900,000 but only received $850,000, which he argued was a breach by the Kazemis. During cross-examination, the Kazemis' attorney asked Mr. Arab about the financial issues that led to his need for a loan from the Kazemis. Responding to this line of questioning, Mr. Arab explained that there

---

[1] The record does not contain a transcript from the November 30, 2021 hearing on Mr. Arab's motion for summary judgment. The trial court's later December 2, 2021 order, however, contains an explanation of what occurred at the hearing.

was a separate lawsuit related to those financial issues. The Kazemis' attorney introduced a written order from that other lawsuit where the trial court had found Mr. Arab not to be credible. Mr. Arab's attorney objected based upon relevancy to the entry of this exhibit, but the trial court allowed it. Finally, Mr. Arab testified that he did accept the $850,000 paid by the Kazemis and that he knowingly entered the agreements.

The trial court entered a memorandum and order on March 31, 2022, in which it made findings of fact and conclusions of law. The trial court found the parties entered into the original Note on October 20, 2015. The Note had a 10% interest rate and a 5% late fee, and it provided for attorney's fees. It was secured by Mr. Arab's home. The parties then entered into the Modification on February 18, 2016. This raised the principal to $900,000. The court also found that there was no basis for the consideration of parol evidence as to the terms of the agreements. When neither the Note nor Modification was paid by Mr. Arab, the Kazemis began foreclosure proceedings, incurring expenses of $964.12. When Mr. Arab threatened bankruptcy, the parties agreed that Mr. Arab would provide title to his home in lieu of foreclosure. Ms. Kazemi paid off three encumbrances at $164,921.74, $137,641.00, and $389,651.57. She then paid an additional $30,104 to prepare the house for sale, including necessary cleaning and repairs. The Kazemis then sold the home for $1,400,349, which the court found was the absolute highest price they could get for the home. The real estate agent received a commission of $42,000. Not accounting for the aforementioned encumbrances and repair costs, the Kazemis netted $1,356,565.34 after taxes and fees. The court then found that the interest on the Note and Modification was $179,583.

The trial court found that Mr. Arab defaulted on the Note and Modification, resulting in a breach of contract. The trial court found that both the Note and Modification were enforceable contracts, that no defenses to enforceability were raised, Mr. Arab did not perform under the contracts, and the nonperformance caused damage to the Kazemis. As for damages, the trial court found that the Kazemis were entitled to a total judgment against Mr. Arab for $843,011.47. This amount was based on the outstanding balance owed of $803,531.47 and $39,480 in attorney's fees.

On appeal, Mr. Arab raises multiple issues:

1. Whether the trial court erred by failing to grant Appellant's motion to amend.

2. Whether the trial court erred by failing to make sufficient findings of fact and conclusions of law under Tenn. R. Civ. P. 52.

3. Whether the trial court erred when it failed to find that Appellees committed the first material breach, or otherwise make findings regarding the same.

- 4 -

4. Whether the trial court erred by ruling that evidence of breach and nonpayment was admissible under the parol evidence rule.

5. Whether the trial court erred by admitting as substantive evidence another trial court's credibility findings concerning Appellant.

6. Whether the trial court erred when it failed to rule on whether the Note and Modification were usurious.

II.

First, we address the trial court's denial of Mr. Arab's motion to amend his answer. We review a trial court's decision to grant or deny a motion to amend under an abuse of discretion standard. *Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 318 (Tenn. 2021) (citing *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 84 (Tenn. 2018)). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Id.* (quoting *Runions*, 549 S.W.3d at 84).

Mr. Arab filed the motion on September 15, 2021. He planned to add the defenses of usury, misrepresentation, and fraud. When he filed the motion, he set the hearing for October 6. After the court advised Mr. Arab that October 6 was not an available court date, Mr. Arab never reset the hearing. At the November 30 hearing on Mr. Arab's motion for summary judgment, the court pointed out to Mr. Arab's counsel that the motion for summary judgment was based on defenses not properly before the court, those he wished to add through his amended answer. The next day, December 1, 2021, Mr. Arab's counsel contacted the court and requested a ruling on the motion to amend. Therefore, the trial court addressed both the motion for summary judgment and motion to amend in its December 2, 2021 order. The court explained that the lawsuit, filed on June 28, 2019, was over two and half years old and the trial was set for December 17, just 16 days after Mr. Arab's December 1 request for a ruling. The trial court also found that the Kazemis would be prejudiced by the amendment. For these reasons, the trial court denied the motion.

Mr. Arab argues that the trial court abused its discretion in denying his motion to amend. He points to the language of Tennessee Rule of Civil Procedure 15.01 to support his argument. It provides that, after the initial fifteen-day amendment period, a party may amend their pleadings only by written consent of the adverse party or by leave of court, which "shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01. Mr. Arab argues that rather than freely grant the motion to amend under Rule 15, the trial court denied it without providing a valid basis, prejudicing him. In response, the Kazemis argue that the trial court was right to deny the motion because Mr. Arab waited over two and half

- 5 -

years after the original answer to file his motion to amend, and that because it was so close to trial allowing the amendment would prejudice the Kazemis. The Kazemis point out that the trial court made precisely such findings in denying Mr. Arab's motion to amend.

The Tennessee Supreme Court has explained that there are several factors a trial court should consider when deciding whether to allow leave to amend a pleading, including "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007) (quoting *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

Mr. Arab argues that undue delay alone cannot be enough of a reason to deny a motion to amend. Here, the trial court did not deny the motion to amend solely based on Mr. Arab's two-and-a-half-year delay but also the prejudice the Kazemis would suffer. "While delay alone is an insufficient basis for denying leave to amend . . . unexplained delay coupled with other factors may constitute undue delay." *March v. Levine*, 115 S.W.3d 892, 909 (Tenn. Ct. App. 2003) (internal quotations omitted). "One such factor is where the party seeking to amend has known all the facts underlying the amendment since the beginning of litigation." *Id.* (citing *Acri v. Int'l Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986)). Another factor is the prejudice to the opposing party, particularly when discovery would have to be reopened to address the amendment. *Id.* (citing *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)).

The Kazemis point out, as they also did in their response to Mr. Arab's motion to amend, that Mr. Arab's proposed amendment would add new affirmative defenses which Mr. Arab knew were available from the beginning of the litigation. They further argue that bringing in these new defenses so late in the proceedings would require the reopening of discovery just before trial. The trial court based its denial on the delay in filing and the prejudice to the Kazemis. Simply stated, the trial did not abuse its discretion, and we affirm the trial court's denial of Mr. Arab's late-filed motion to amend.

III.

Mr. Arab next argues that the trial court erred in failing to find that the Kazemis committed the first material breach when they did not tender the entire $900,000, but only $850,000. Typically, "a party who commits the first uncured material breach of contract may not recover damages for the other party's material breach." *Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.*, 652 S.W.3d 802, 819 (Tenn. Ct. App. 2021) (quoting *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009). However, a party who accepts benefits under the contract with knowledge of a breach generally "waives the breach." *Madden*, 315 S.W.3d at 815 (quoting *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby Cnty. Airport*, 169 S.W.3d 627, 635-36

(Tenn. Ct. App. 2004)).

Here, the record indicates that Mr. Arab did not assert the first material breach defense in his answer. At trial, Mr. Arab's counsel confirmed to the trial court that he first attempted to raise the defense in his motion to amend the answer, which the trial court had denied. In reviewing the proposed amended answer, it does not appear that the defense was even raised there. "As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading." *Napolitano v. Bd. of Pro. Resp.*, 535 S.W.3d 481, 497 n.9 (Tenn. 2017) (quoting *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013)); *Moore Freight Servs., Inc. v. Mize*, No. E2021-00590-COA-R9-CV, 2022 WL 325595, at *4 (Tenn. Ct. App. Feb. 3, 2022) *no perm. app. filed* (classifying "the doctrine of first material breach of contract" as an affirmative defense). Mr. Arab has not disputed the classification of first material breach as an affirmative defense. Because the defense was not properly raised before the trial court, the issue was waived by Mr. Arab, and the trial court properly declined to consider it.

IV.

Mr. Arab next argues that the trial court erred when it ruled that evidence of breach and nonpayment was inadmissible under the parol evidence rule. This argument is rather perplexing and does not match the statement of the trial court with regard to parol evidence. The trial court specifically stated that "no parol evidence has been accepted by the Court regarding the terms of the parties' agreements because there has been no legal basis for parol evidence presented." There is no reference to parol evidence in the trial proceedings or in Mr. Arab's proposed Rule 24 statement of evidence. Nowhere in the trial court's ruling does it indicate that the court rejected evidence of breach and nonpayment based upon the operation of the parol evidence rule. To the contrary, the trial court ruled that it was not accepting parol evidence as to the terms of the parties' agreement not failure to perform or nonpayment.

The general rule is that "a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694-95 (Tenn. 2019) (quoting Black's Law Dictionary 1292 (10th ed. 2014)). Parol evidence is "not admissible to contradict a written agreement." *Id.* (quoting *Hines v. Wilcox*, 33 S.W.914, 914-15 (Tenn. 1896). Further, the rule, although regularly expressed as one of evidence, is "more accurately characterized as a rule of substantive law." *Id.* at 695-96 (citing *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)).

Mr. Arab asserts that there is no basis in the court's order from which one can determine why the court ruled Mr. Arab is obligated to pay $900,000 instead of $850,000

that he was "actually loaned." This argument is not related to the parol evidence rule. Mr. Arab is not actually advancing an argument that the trial court should have considered other evidence to determine what the contract meant but rather an argument about performance of the contract. To the extent that Mr. Arab is arguing that the trial court should have considered parol evidence to determine the meaning of the agreements in a way that contracted their written terms, we disagree and affirm the trial court's refusal to consider parol evidence. To the extent that Mr. Arab is asserting that the trial court's parol evidence ruling is what prevented consideration of evidence as to failure to breach or failure to perform, the record simply does not support that surmise. Furthermore, Mr. Arab has not properly directed us to what evidence he believes to have mistakenly not been considered.

V.

Next, we address Mr. Arab's argument that the trial court erred in admitting evidence of a negative credibility finding made by a different trial court in an unrelated case. During cross-examination, the Kazemis' attorney asked Mr. Arab about the financial issues he had earlier referenced that led to his need for a loan from the Kazemis. Mr. Arab explained that there was a separate lawsuit related to those financial issues. The Kazemis' attorney then introduced a written order from that other lawsuit where the other trial court had found Mr. Arab not to be credible. Mr. Arab's attorney objected to the entry of this exhibit, arguing solely that Mr. Arab's "credibility is not relevant to this matter." The trial court below overruled the objection and entered the order as exhibit 21.

According to Mr. Arab, this was reversible error because the evidence was not relevant under Tennessee Rules of Evidence 401 and 402. On appeal, Mr. Arab also cites to Tennessee Rule of Evidence 404, addressing the use of character evidence to prove action in conformity with the character trait, and 608, which deals with the limitations on using opinion, reputation, and character evidence to attack credibility. However, because his counsel only objected as to relevance at trial, we only review whether the trial court was correct to allow the evidence over the relevancy objection. *See* Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context."); *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) ("[A] party is bound by the ground asserted when making an objection to the admission of evidence.")

Decisions regarding the admission of evidence are reviewed for abuse of discretion. *Mitchell v. City of Franklin*, No. M2021-00877-COA-R3-CV, 2022 WL 4841912, at *13 (Tenn. Ct. App. Oct. 4, 2022) (citing *Merrell v. City of Memphis*, No. W2013-00948-COA-R3-CV, 2014 WL 173411, at *8 (Tenn. Ct. App. Jan. 16, 2014)). Trial courts are given a "wide degree of latitude" in making such determinations. *Brandy Hills Ests., LLC v. Reeves*, 237 S.W.3d 307, 318 (Tenn. Ct. App. 2006) (quoting *Otis v. Cambridge Mut. Fire*

*Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1993)). Tennessee Rule of Evidence 401 defines relevant evidence quite broadly: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the prior court's order finding Mr. Arab not to be credible based on his untruthfulness in various filings in that matter is relevant to his credibility as a witness in this case. In *Buchanan v. Harris*, this court found untruthfulness to be relevant to credibility, stating that the party's "untruthfulness on any occasion is relevant to her credibility." 902 S.W.2d 941, 946 (Tenn. Ct. App. 1995); *see also White v. Empire Exp.*, Inc., 395 S.W.3d 696, 718 (Tenn. Ct. App. 2012) (a "witness's credibility is always relevant" at trial. (internal citations omitted)). While there may have been another basis to exclude this evidence, we are limited to reviewing the basis for the objection expressed at trial. *See Vance*, 596 S.W.3d at 253. We do not find that the trial court abused its discretion in concluding the evidence was relevant, which was the objection presented to the trial court. We affirm on this ground.

VI.

We next address Mr. Arab's argument that the trial court failed to make proper findings of fact and conclusions of law under Tennessee Rule of Civil Procedure 52.01. The Rule requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specifically and shall state separately its conclusions of law and direct the entry of an appropriate judgment." Tenn. R. Civ. P. 52.01. In rendering its findings of fact and conclusions of law, the trial court "has a duty to ensure that its rulings are adequately explained." *Wallace v. Wallace*, No. M2022-01279-COA-R3-CV, 2023 WL 7919928, at *7 (Tenn. Ct. App. Nov. 16, 2023), *no perm. app. filed* (quoting *Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *11 (Tenn. Ct. App. Jan. 27, 2021)). This is to avoid a situation in which an appellate court is "left to guess as to why the trial court reached its conclusion." *Id.* (quoting *Calzada v. State Volunteer Mut. Ins. Co.*, No. M2020-01697-COA-R3-CV, 2021 WL 5368020, at *8 (Tenn. Ct. App. Nov. 18, 2021)).

> While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.

*Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (internal citations omitted).

Mr. Arab argues that the trial court failed to make adequate findings explaining why he is required to pay to the Kazemis $900,000 instead of $850,000, the amount he received. We note the trial court found, and the record reflects, that the signed Modification

Agreement states that the loan is a $900,000 loan. According to Mr. Arab, there is, however, no evidence showing that the Kazemis paid Mr. Arab the full $900,000 and the trial court does not provide any explanation for why Mr. Arab is found to owe the full $900,000. In his words, he and this court are "left to guess why Appellant owes money that he never borrowed" because the trial court failed to make adequate findings.

In contrast, the Kazemis argue that the trial court made extensive findings of fact that fully comply with Rule 52.01. They point to the following findings in the trial court's final order: Mr. Arab is a general contractor familiar with contracts, he reviews contracts as part of his business, he read the contracts involved in this case, and he agreed to their terms before signing them. The trial court also made specific findings about the terms of the contracts, including the $900,000 principal and 10% interest rate. Our review of the final order shows that these facts are all clearly found by the trial court, and we review these findings with a presumption of correctness. *See Coleman*, 551. S.W.3d at 694.

Having considered the facts presented, the trial court found that Mr. Arab was a sophisticated and experienced businessman who had familiarity with these kinds of contracts. He read the contracts and agreed to their terms. Whatever the parties discussed outside the words of the contract was not considered and therefore not part of the trial court's order. Rather, the trial court based the amount owed on the contracts' terms.[2] Mr. Arab's concerns about limitations in the trial court's factual findings are more accurately connected with seeming deficiencies of pleading as to his defense than they are with the trial court failing to address what was properly before it. If Mr. Arab's defense was confined as if in a straitjacket, it appears to have been a garment rendered through his own pleadings. Assessed in light of the issues properly before the court, we agree with the Kazemis that the trial court made adequate findings under Rule 52.01.

VII.

Finally, we address Mr. Arab's argument that the trial court erred in failing to find that the Note and Agreement were each usurious. Importantly, Mr. Arab did not raise usury in his original answer. As stated above, we affirm the trial court's denial of Mr. Arab's motion to amend his answer to add, among other things, the defense of usury. Issues raised on appeal that were not properly raised in the trial court are generally considered waived. *Jackson v. Burrell*, 602 S.W.3d 340, 344 & n.5 (Tenn. 2020) (citing *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010)). Therefore, we find that the issue is waived.

---

[2] Further, the Kazemis argue that Mr. Arab has waived any argument as to the $50,000 difference because he accepted the $850,000 because a party who accepts benefits under a contract with knowledge of a breach "waives the breach." *Madden*, 315 S.W.3d at 815 (quoting *94th Aero Squadron of Memphis, Inc*, 169 S.W.3d at 635-36). However, as we find the trial court's findings of fact to be adequate, we do not reach this argument.

VIII.

For these reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed against the appellant, Hamid Arab, for which execution may issue if necessary.

_____
JEFFREY USMAN, JUDGE