**Helen M. HANDLEY, Plaintiff-Appellant,**

v.

**Willie Kate MAY, Defendant-Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

July 6, 1979.

Permission to Appeal Denied by
Supreme Court Oct. 22, 1979.

Walter L. Fuller, Jr., Oak Ridge, William A. Young of Cheek, Taylor & Groover, Knoxville, for plaintiff-appellant.

James T. Barry, Jr., St. Louis, Mo., Harry L. Lillard of Lillard & Seivers, Oak Ridge, for defendant-appellee.

## OPINION

FRANKS, Judge.

This is an action for slander, presenting on appeal as a principal issue whether the plaintiff, as a matter of law, must plead in his complaint the precise words proved at trial.

The complaint alleges defendant had told one W. A. Jones, Sr., that plaintiff was "a member of organized crime and was acting in consort with other members of organized crime in Knoxville and surrounding communities." Jones' testimony was offered by deposition at the trial and he stated defendant had said to him that "Dan Bectol, who is the manager of Credit Bureau in Knoxville, was connected with the Mafia, and that Helen Handley [plaintiff] was involved in the underworld, too."

At the conclusion of plaintiff's proof, defendant moved for a directed verdict. Re-

lying on *Lackey v. Metropolitan Life Ins. Co.*, 26 Tenn.App. 564, 174 S.W.2d 575 (M.S. 1943), the trial court sustained the motion, ruling the failure of plaintiff to prove the exact words alleged in her complaint was fatal.

The evidence establishes that at one time the parties were associated in the business of credit reporting and computer billing and collection of accounts in the Oak Ridge area. The defendant operated the credit bureau and plaintiff supervised the billing and collection operation. Subsequently, the parties separated the operations by swapping stock in the two corporations which had been formed to handle the respective operations with the defendant acquiring total ownership of the credit bureau and plaintiff total ownership of the billing and collecting firm; however, their offices remained in the same building. In 1977, plaintiff entered into an agreement with the operators of a credit bureau in Cleveland, Tennessee, whereby she would establish a credit bureau in Oak Ridge; in the course of establishing the credit reporting service, she entered into an agreement with the Knoxville Credit Bureau which enabled her to obtain credit information from their records. This direct competition with defendant's business resulted in a suit over the use of similar trade names which was recently before this court.

Plaintiff alleged, as a result of this competition, the defendant entered into "a campaign of slander, harassment, and embarrassment calculated to destroy the personal and professional integrity of the plaintiff."

At the trial, the only material evidence offered on this allegation was the testimony of Jones.

The sole assignment of error on appeal is:

The Trial Court erred in granting a directed verdict for appellee on the ground that the offensive words complained of were not alleged verbatim in the complaint and in holding the complaint was fatally defective on that basis.

In the *Lackey* case relied upon by the trial judge, the Middle Section of this court held: " . . . in an action for libel or slander the exact language of the defamatory statement must be set out in the complaint, . . . " 26 Tenn.App. at 581, 174 S.W.2d at 582. The basis of that holding was derived from prior Tennessee cases which had held that " . . . the words must be proved strictly as alleged; where the proof is of equivalent words or words of similar import, or of words spoken interrogatively when they were alleged to have been spoken affirmatively, the variance is fatal." At p. 580, 174 S.W.2d at p. 582.

The plaintiff insists that the *Lackey* standard is no longer operative having been superseded by the enactment of the *Tennessee Rules of Civil Procedure*. In particular, she relies upon Rule 8.01 which states:

8.01. *Claims for relief.*—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

Under this standard, the plaintiff maintains the harsh technical requirements of common law pleading have been abrogated. The technical requirement for pleading the exact language under the *Lackey* rationale was necessary in order:

[T]hat the court may know exactly what the words were so as to be able to judge whether they are actionable; that the defendant may know what he is called on to meet and how to shape his defense, whether by demurring, denying, or justifying; and that the judgment may be so certain that it may be pleaded in bar of another action for the same cause. At p. 581, 174 S.W.2d at p. 582.

This rationale under modern rules of pleading is no longer persuasive. There is no actual necessity that a court have the exact words of an allegedly defamatory statement in order to determine whether or not they are actionable. Slanderous statements in most instances involve imputations

of moral turpitude or criminal behavior and, in evaluating whether the statement has subjected an individual to ridicule or degradation in the community, it is the substance of the statement not the form which is significant. Of course, if the complaint is so vague that a court cannot ascertain the nature of the alleged slander, it is insufficient.

Where the substance of the slanderous utterance is pled along with notice of the time and place of the utterance the defendant is apprised of the allegations that he must defend against. To the extent that the circumstances surrounding the utterance are significant, the broad and varied discovery established by the Rules of Civil Procedure provide ample means to ascertain the details of the circumstances. The means of discovery available at the time of the *Lackey* decision were quite limited and many of the functions of modern discovery were then performed by the system of common law pleading.

In this context, other rules of procedure are pertinent. Rule 9, purports to list matters which must be pleaded with particularity. Included are fraud, mistake, lack of capacity and other matters. No mention of defamation is made in this rule. The advisory committee comment to Rule 9 states that the particularity requirement "is not intended to require lengthy recital of detail. Rather, the Rule means only that general allegations of fraud and mistake are insufficient; the pleader is required to particularize, but by the 'short and plain' statement required by Rule 8.01."

The specific enumerated actions which must be specifically pleaded need not be set out with the kind of precision which *Lackey* required. This is consistent with the injunction set forth in Rule 1: that the *T.R. C.P.*, "shall be construed to secure the just, speedy and inexpensive determination of every action" and the abolition of technical forms of pleading in favor of "simple, concise and direct" averments contained in 8.05.

Under the common law rules governing pleading, a plaintiff in a slander action was placed in a difficult posture, as illustrated in a statement from *Butler v. Stites*, 7 Tenn.App. 482, 486 (M.S.1928):

The rule is that in an action for slander, but possibly uncertain what the slanderous words were, the plaintiff may state one set of words in one count and another set in another, and so varying them in as many different ones as he chooses. Then if the evidence established either set of words the plaintiff recovers. [Citations omitted.]

This burdensome, technical and harsh system is at odds with the scheme established by the *Tennessee Rules of Civil Procedure*. As stated in *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.*, 367 F.2d 625 (C.A.3), the court, in evaluating the impact of the *Federal Rules of Procedure* on pleadings, said:

[T]echnical rules must give way when they come in conflict with our simplified rules of pleading. [Citations omitted.] At p. 629.

■ The better reasoned approach to the issue was taken in the Michigan case *Pursell v. Wolverine-Petronix, Inc.*, 44 Mich. App. 416, 205 N.W.2d 504 (1973). The court noted that because an alleged slander is spoken, it is often impossible for the hearer to repeat it verbatim. And, where the remark is not made within the plaintiff's presence, the *in haec verba* requirement would cause plaintiff's case to depend on the precision of a third party's memory. On that basis, the court held that a complaint which sets out the substance of the defamatory statement is sufficient.

■ In the case *sub judice*, the utterance was made to the third party Jones in a telephone conversation who, in turn, apprised his son of the utterance who, in turn, in a telephone conversation, restated the substance of the conversation to plaintiff. No other publication of the utterance was established in the record. The rationale of *Pursell* is highly relevant to the case *sub judice*. Its wisdom is reflected in the testimony of Jones when he was asked:

Q. Did she say Mr. Bectol was a member of the Mafia?

A. The best I remember she said "connected" with the Mafia. The word "connected" was used.

This approach was followed in *Pirre v. Printing Developments, Inc.*, 432 F.Supp. 840 at 843, (S.D.N.Y.1977) (applying *F.R. C.P.* 8(a)):

To be sure, plaintiff has failed to plead those [the allegedly slanderous] statements in haec verba and his witnesses recall the gist of the conversations rather than the precise language. However, once the defendant has sufficient notice of the nature of the communications complained of it is the function of the jury rather than of rigidly applied pleading rules to ascribe weight to the inexactness of such complaints.

We conclude this is the proper approach under the *Tennessee Rules of Civil Procedure* which have supplanted the common law rule followed in *Lackey*. Plaintiff's assignment of error is sustained since she offered proof of words substantially the same as those alleged.

However, the defendant asserts that there is no material evidence in the record on the issue of damages which would require submission of the case to the jury.

■ Our Supreme Court recently noted that the United States Supreme Court has eliminated, on constitutional grounds, presumed damages in defamation suits. The plaintiff is now required to prove actual damages in all defamation cases. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978).

■ At the trial, plaintiff's tax returns were introduced to show that she had suffered no loss of revenues from her business since the occurrence of the alleged slander. And defendant asserts that she has, therefore, suffered no compensable damage. This argument is based upon a misapprehension of the law. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the case followed by the Tennessee Supreme Court in *Nichols*, abolishing the *per se/per quod* distinction, states as to the actual damage requirement:

It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury. 418 U.S. at 350–1, 94 S.Ct. at 3012.

Failure to prove special damages or out-of-pocket loss is not necessarily determinative. The issue is whether the record contains any material evidence of the types of injury outlined in *Gertz*. If there is material evidence on any of the elements of damages, the cause must be submitted to the jury.

■ In this regard we are required to consider all the evidence favorable to the plaintiff, drawing all reasonable inferences therefrom, disregarding all countervailing evidence. *Lowe v. Irvin*, 52 Tenn.App. 356, 373 S.W.2d 623 (E.S.1963).

As noted *supra*, plaintiff proved no special damages. The only possible damages that could arise would be derived from any actual harm inflicted by the defamation. There is no evidence whatsoever of any impairment of reputation and/or standing in the community[1] and, on the issue of personal humiliation and mental anguish and suffering, the only evidence in this regard is that plaintiff was under mental stress and strain independent of the defam-

---

1. The publication was via a long distance telephone call to a resident of Cleveland, Tennes-

see. There is no evidence of publication in the "community".

atory utterance and she stated when she was apprised of the utterance in the telephone conversation: "Well, the telephone call was quite upsetting. This was in a series, I think, that had been upsetting to me in my business. And when this occurred, I went to my lawyer's office and sat down, and, I said, 'Where does it stop. I can't conduct business in this manner.'"

She further stated that, as a result, she was unable to concentrate in her business[2] and concluded: "I think it was the unknown that bothered me more than anything else." Plaintiff's assertions are mere conclusions; plaintiff's evidence establishes that she sustained no special damages in connection with her business and no physical suffering or illness. Moreover, her reaction to the telephone call apprising her of the utterance may fairly be characterized as one of anger rather than anguish—mere annoyance or loss of peace of mind do not constitute recoverable special damages. *Mell v. Edge*, 68 Ga.App. 314, 22 S.E.2d 738 (1942).

We conclude there is no material evidence in the record on the issue of damages and the verdict should have been directed on that issue and where the trial court has reached the correct result but for the wrong reason the judgment will be affirmed on appeal. *Adams v. Underwood*, 225 Tenn. 428, 470 S.W.2d 180 (1971); *Cherokee Ins. Co. v. U.S. Fire Ins. Co.*, 559 S.W.2d 337 (Tenn.App.1977).

The judgment of the trial court is affirmed with costs of appeal assessed against appellant.

PARROTT, P. J. (E.S.) and GODDARD, J., concur.

---

2. She attributed this to "many other things" as well and added, "[R]ight at that time, I was worried about other things in a personal matter; and, I really just had more than I could handle at this time, both at home and at work, . . ."