IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2003 Session

## WYLIE B. DOWLEN v. GARY MATHEWS

**Appeal from the Circuit Court for Montgomery County**
**No. C10-705    John H. Gasaway, Judge**

_____

**No. M2001-03160-COA-R3-CV - Filed March 14, 2003**
_____

This appeal arises from a police officer's lawsuit against a Clarksville resident for assault, defamation, and intentional infliction of emotional distress after the officer responded to a noise complaint at the resident's home.  The trial judge directed a verdict for the defendant.  We affirm the trial court.

**Tenn. R. App. P.3; Appeal as of Right, Judgment of the Circuit Court**
**Affirmed and Remanded**

STELLA L. HARGROVE, Sp. J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Thomas N. Bateman and Robert T. Bateman, Clarksville, Tennessee, for the Appellant, Wylie B. Dowlen

Rodger N. Bowman, Clarksville, Tennessee, for Appellee, Gary Mathews

**OPINION**

I.

In the late evening hours of October 29, 1994, at approximately 10:30 p.m., Officers Rodd Watters and Erik Gonzalez with the Clarksville Police Department were dispatched to the home of Gary Mathews to investigate complaints of loud music.  Mr. Mathews agreed to turn down the music.  Shortly after midnight on October 30, 1994, Officers Erik Gonzalez and Bert Clinard responded to another complaint of loud music at the home of Mr. Mathews, and issued him a citation.  Mr. Mathews and some of his guests cursed at the officers, and one of the guests told the officers that if they came back, they would not be leaving.  At this point, the officers withdrew and waited for additional officers to arrive.  Officer Wylie B. Dowlen, along with Officer David Johnson and Sgt. Al Ansley responded.  Officer Dowlen testified that Mr.

Mathews looked at him and aid, "If you come back, you will not leave." The officers left the premises.

Later in the morning of October 30, 1994, Mr. Mathews had a telephone conversation with Sgt. Ansley. Within the course of the telephone conversation Officer Dowlen contends that statements and accusations were made by Mr. Mathews that defamed him. Additionally, Officer Dowlen claims that language used and accusations made within the conversation amounted to outrageous conduct and intentional infliction of emotional distress. Officer Dowlen also contends that Mr. Mathews words, "If you come back, you will not leave," give rise to a claim of assault.

## II.  STANDARD OF REVIEW

A Tenn. R. Civ. P. 50 motion for directed verdict provides a vehicle for deciding questions of law. The question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. In answering this question, the trial judge does not weigh the evidence and does not evaluate the credibility of witnesses. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). Instead, the trial judge reviews the evidence in the light most favorable to the non-moving party, gives the non-moving party the benefit of all reasonable inferences, and disregards all evidence contrary to the non-moving party's position. *Alexander v. Armentrout*, 24 S.W. 3d 267, 271 (Tenn. 2000).

If the party with the burden of proof has presented sufficient evidence to create an issue of fact for the jury, then a directed verdict should not be granted. If there is any doubt regarding the conclusions to be drawn from the evidence, or if reasonable persons could draw different conclusions from the evidence, a jury issue has been created. *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 8887, 891 (Tenn. Ct. App. 1995). The court may grant the motion only when the evidence is susceptibleto but one conclusion. *Eaton v. McLain*, 891 S.W. 2d 587, 590 (Tenn. 1994). "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Eaton v. McLain*, 891 S.W.2d at 590.

## III.  ASSAULT

In Tennessee, the tort of assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson County*, 965 F. Supp. 1026, 1037, (M.D. Tenn 1997); *Vafaie v. Owens*, No. 92 C-1642, 1996 WL 502133 (Tenn. Ct. App. Sept. 6, 1996); *Johnson v. Cantrell*, No. 01A01-9712-CV-00690, 1999 Tenn. App. LEXIS 7 (Tenn. Ct. App. Jan. 20, 1999). This definition requires an intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff. *Baker v. Moreland*, 1989 Tenn. App. LEXIS 537, No. 89-62-II, 1989 WL 89758, (Tenn. Ct. App. Aug. 9, 1989)

Upon cross-examination, Officer Dowlen testified at trial as follows:

Q.     Now, sir, when you were at the scene you said – you testified to this jury on direct that you heard Mr. Mathews say not to come back because if you did you wouldn't be leaving alone?

A.  I saw Mr. Mathews point at me, point blank at me and told me that.

-------------

R.     Okay.  So whatever it is you contend he said to you, you understand we're simply in a disagreement about what he said, but regardless of what it was he said, after he said those words, he walked away.  Correct?

A.     Yes.

Q.     He walked away from you.  Correct?

A.     Yes.

Q.  He didn't walk toward any other officer, did he?

B.     He just turned and walked.

Q.     Okay.  But he walked away from the officers, you and the other officers.  Correct?

A.     Yes.

Q.     I don't want to leave with the suggestion or impression that he walked to somebody else to say somethng or do something to them to another officer.   He didn't approach another officer, did he?

A.     He didn't say anything else to another officer.

Q.     Okay.  And at that point all the officers left.  Correct?

A.     Sergeant Ansley decided to diffuse the situation and we left.

Q.     Now, in the statement that you say Mr. Mathews made to you about, "If you come back you will not leave," you put in your report specifically that he – when you say he made that statement that he said, "If you come back."  Correct?

A.     Yes.

Q.     Okay.  He didn't say anything according to you even about what he proposed to do to you physically right there on the spot that moment.  Correct?

A.     No.

Q.     I'm correct about that?

A.     Yes.

Q.     It was clearly stated in terms of, "If you come back to my property."  Correct?

A.     Yes.

There is no evidence in the record that the words spoken by Mr. Mathews to Officer Dowlen were accompanied by any overt act or physical movement causing Officer Dowlen to reasonably believe that he was in imminent physical harm or danger.  Officer Dowlen, as well as all other witnesses present at the scene, testified that Mr. Mathews simply walked away.

It is the opinion of this court that the trial court properly granted the directed verdict as to the issue of assault.  Taking the strongest legitimate view of the evidence in favor of Officer Dowlen, we must conclude that reasonable minds could only determine that no assault was committed.

## IV.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OR OUTRAGEOUS CONDUCT

In *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn.1999), our Supreme Court reviewed the history of the tort of intentional infliction of emotional distress, or outrageous conduct, in Tennessee.  To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must prove: (1) that the conduct complained of is intentional or reckless; (2) that the conduct is so outrageous in character and so extreme in degree as to go beyond all bounds of decency tht it is not tolerated by civilized society; and (3) that the conduct results in serious mental injury to the plaintiff.  *Bain v. Wells*, 936 S.W.2d 618, 633 (Tenn. 1997).

In determining whether conduct may properly be described as outrageous, Restatement (Second) of Torts, Section 46 Comment d, imposes the following standard:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Under this high standard, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not classified as outrageous. *Bain v. Wells*, 936 S.W.2d at 622.

In a telephone conversation with Sgt. Ansley later in the morning of the incident, Mr.

Mathews made some angry, harsh, racist comments about Officer Dowlen. Officer Dowlen claims that these comments rise to the level of outrageous conduct, resulting in serious mental injury to him.

The statements of Mr. Mathews relied upon by Officer Dowlen include: "You tell that G--D—Dowlen, that black son of a b__, he's a dead mother f___," the threat that if Officer Dowlen came back to Mr. Mathews' residence he would not leave, and Mr. Mathews' threat that he was going to get Officer Dowlen's job. Also, Mr. Mathews stated that Officer Dowlen threatened both him and his son.

Officer Dowlen testified that following the incident, he had nightmares for a long time and could not sleep half the time. He said that he would no longer respond to a call concerning any of Mr. Mathews' property, "figure(ing) that any little thing that I done would cost me m job, … that if I done something that upset somebody, my job would be on the line."

On cross-examination, Officer Dowlen testified that he never had to call in sick or was unable to work because of any kind of disability, infirmity or illness as a result of the incident. He testified that he came to work several nights and would be asked by people on his shift what was wrong and that he went to work when he "was less than 100%."

The evidence shows that Officer Dowlen was never disciplined, demoted or investigated as a result of the incident.

The trial court found that Mr. Mathews' words did not rise above the level of mere insults, indignities, threats, annoyance or petty oppression. We agree.

Taking the strongest legitimate view of the evidence in favor of Officer Dowlen, reasonable minds could only determine that the comments of Mr. Mathews were not so outrageous in character and so extreme in degree as to go beyond all bounds of decency that is not to be tolerated by civilized society.

## V. DEFAMATION

In cases of defamation, the court must first decide whether the person defamed is a private person or a public figure. If he is a public figure, then he must prove actual malice on the part of defendant. *Murray v. Lineberry*, 69 S.W.3d 560 (Tenn. Ct. App. 2001). Actual malice exists when a statement is made with knowledge that the statement is false, or with reckless disregard of whether it is false. *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 415 (Tenn. 1978); quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 726 (1964) . *Selby v. Ilabaca*, No. 02 A01-9503-CV-00058, 1996 WL 219620, at *4 (Tenn. Ct. App. 1996). In *Selby v. Ilabaca*, our court held that a police officer was a public official, and one with duties that affect the lives, liberty and property of citizens. *Selby v. Ilabaca*, 1996 WL 219620 at *4.

In *Murray v. Lineberry*, the Court held as follows:

We believe that the same is true of any law enforcement officer… The New York Times rule, however, raises the standard for recovery only when the alleged defamatory statements relate to the public official's official conduct. *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). With respect to whether a plaintiff's conduct is private rather than connected with his official duties, our Supreme Court has stated:  The occupant of any position in any branch of government who exercises any public function is subject to The New York Times rule as to all conduct in his official capacity or as to any conduct that might adversely affect his fitness for public office, if he has or "appear(s) to the public to have, substantial responsibilities for or control over the conduct of governmental affairs." *Murray v. Lineberry*, 69 S.W.3d 560 (Tenn. Ct. App. 2001)

In a defamation case, a plaintiff must prove actual damages resulting from actual injury. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50, 94 S. Ct. 2997, (1974); *Memphis Publishing v. Nichols*, 569 S.W.2d at 412. The United States Supreme Court addressed the issue of actual damages in *Gertz v. Welch*, stating:

We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. *Gertz,* 418 U.S. at 349-50.

When looking at damages for a defamation suit, we have stated that, "the issue is whether the record contains any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering." *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997); *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979). When discussing a plaintiff's reaction as anger rather than anguish, we have also stated that "mer annoyance or loss of peace of mind" is not enough to qualify for actual damages. *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979)

In *Murray v. Lineberry*, the court found no proof of actual damages, finding that there was no evidence presented that the embarrassment hampered the Plaintiff's  ability to perform his job as a sheriff's deputy and holding that the evidence did not rise above "anger, mere annoyance or loss of peace of mind." *Murray v. Lineberry*, 69 S.W.3d at 564.

The trial court found that Officer Dowlen was acting in his capacity as a public official. The trial court considered Mr. Mathews' tirade of inexcusable, offensive, racist language, and found that it did not rise to the level of defamation.

Officer Dowlen testified that no disciplinary action was taken toward him and that he received no cuts in pay, demotions or suspensions.  No internal investigation stemmed from the incident.  While Officer Dowlen testified that he had nightmares and had difficulty sleeping following the incident, he missed no work because of sickness, infirmity or disability as a result of the incident with Mr. Mathews.  Sgt. Ansley testified that nothing Officer Dowlen said or did changed his opinion as to the caliber of Officer Dowlen as a police officer.

It is the opinion of this court that the trial court properly granted the directed verdict as to defamation.  Again, taking the strongest legitimate view of the evidence in favor of Officer Dowlen, reasonable minds could only determine that Mr. Mathews' words did not rise to the level of defamation, and that the evidence does not rise above anger, mere annoyance or loss of peace of mind, resulting in no actual damages to Officer Dowlen.

## VI.  PUNITIVE DAMAGES

As a result of this court's ruling, there is no finding of legal injury to Officer Dowlen. Therefore, the issue of punitive damages is precluded.

## VII.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded to the trial court. Costs are asessed against Appellant.

_____
STELLA L. HARGROVE, JUDGE