IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 31, 2011

**GEOFFREY TODD KRASNER v. JOHN ARNOLD**

**An Appeal from the Circuit Court for Madison County**
**No. C10264      Donald H. Allen, Judge**

───────────────

**No. W2011-00580-COA-R3-CV - Filed December 28, 2011**

───────────────

This appeal involves claims of defamation. After words were exchanged in the course of a parenting dispute, the plaintiff filed this lawsuit against the defendant father of the plaintiff's girlfriend's daughter. A bench trial was held in which both parties were self-represented. The trial court held in favor of the defendant father. The plaintiff now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Geoffrey Todd Krasner, Jackson, Tennessee for Plaintiff/Appellant, *Pro Se*.

John Arnold, Cedar Grove, Tennessee for Defendant/Appellee, *Pro Se*.

## MEMORANDUM OPINION[1]

### FACTS AND PROCEEDINGS BELOW

Defendant/Appellee John Arnold ("Father") and Karen Caldwell ("Mother"), never married to each other, are the parents of a 7-year-old daughter ("Daughter") born in approximately 2004. Their parenting arrangement was apparently governed by a juvenile court order. At the time of the underlying events, Mother was romantically involved with Plaintiff/Appellant Geoffrey Todd Krasner ("Krasner").

In March 2010, Mother and Father were apparently embroiled in a dispute over the parenting arrangement. On March 6, 2010, Father drove away from Mother's home with Daughter in his car, in violation of a consent order between the parties. Mother called 911, alleging that Daughter had been kidnapped. She then chased Father's vehicle in her car, and called Krasner *en route* to tell him what had happened and which direction they were heading. The events that later transpired are the primary basis of this lawsuit.

Police officers quickly responded to Mother's 911 call and pulled over both Father and Mother for questioning. When Krasner arrived on the scene, his actions and words were perceived by Father as threatening. Father told the police officers that he did not know Krasner and that Krasner's conduct caused Father to be afraid of him. The police officers eventually let Father leave with Daughter. After that, Father filed an emergency petition in juvenile court to obtain custody of Daughter, referencing Krasner and his demeanor.

In August 2010, Father testified in juvenile court that he did not want Daughter around Krasner because Krasner was "dangerous." Krasner apparently owned or worked in a pawn shop that sold guns, among other things, and Father did not want Daughter in that environment. The juvenile court later entered an order enjoining Mother from bringing Daughter around Krasner and his pawn shop. In later parenting disputes in 2011, Father asserted that Mother violated the juvenile court's order by bringing Daughter around Krasner and his pawn shop, and again asserted that Krasner was "dangerous."

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

On September 13, 2010, Krasner filed this lawsuit against Father in the Circuit Court of Madison County, Tennessee. Father did not immediately file a response. On October 14, 2010, Krasner filed a motion for default judgment. That same day, Father filed a motion to dismiss for failure to state a claim. In his motion, Father claimed that he did not file an answer because Krasner's complaint was procedurally inadequate and incomprehensible. The trial court denied both motions and scheduled the case for trial on March 3, 2011.

In the trial, both parties were self-represented. The trial court heard testimony from Mother, Father, Krasner, two police officers, and a co-worker of Krasner. The parties, proceeding *pro se*, questioned the witnesses and testified on their own behalf. The trial judge asked questions of the witnesses as well. The testimony centered on the events of March 6, 2010 with the police officers, and the ensuing juvenile court parenting disputes.

At the conclusion of the trial, the trial court issued an oral ruling in which he reviewed the evidence presented and the claims asserted by Krasner in his complaint. The trial court found no proof to support the claims of negligent or intentional infliction of emotional distress, or the claim of a civil rights violation. On the claims of defamation, slander, and libel, the trial court explained the required elements and found that they had not been proven. The trial court expressly credited the police officers' testimony. It found that the statements allegedly made by Father were not defamatory, and that Krasner did not prove any damage to his reputation.

Subsequently, the trial court issued a written order dismissing Krasner's complaint. Krasner now appeals.

### ISSUES ON APPEAL & STANDARD OF REVIEW

On appeal, Krasner raises the following issues:

1. Whether the trial court erred by refusing to enter default judgment pursuant to Tenn. R. Civ. P. 55(d) when no response was filed within the required time and no answer was filed at all.
2. Whether the trial court erred by finding that Krasner did not prove by a preponderance of evidence any of the causes of action alleged in the complaint, specifically slander, libel and defamation, when Father admittedly made the statements about Krasner alleged in the complaint.
3. Whether sufficient proof was produced at trial to support the judgment in favor of Father.

Father did not file a brief on appeal.[2]

The decision to grant or deny default judgment is reviewed under an abuse of discretion standard. *State of Tenn. ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). An abuse of discretion occurs when injustice is caused to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *Konvalinka v. Chattanooga-Hamilton Co. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2007). The abuse of discretion standard gives deference to the trial court's decision, and does not permit an appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

The abuse of discretion standard was described by this Court in *State of Tennessee ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). In *Looper*, we stated:

> A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal." . . . . The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case.

*Looper*, 86 S.W.3d at 193–94 (citations omitted).

---

[2]In response to Krasner's appeal, Father filed a letter stating as follows:

> With all due respect to the court, this is my only response to the lawsuit against me.
>
> I live in Carroll County in Cedar Grove. My family (wife, 6 year old, and 9 month old) have lived here for a year. I am a stay at home dad. I have no time for this matter regarding Mr. Krasner. I do not know this man. He has sued me for a million dollars. I am literally holding a baby in my arms while dealing with this issue. Mr. Krasner lost his case against me. When I get mail from him, I immediately throw it in the garbage. I am concerned with this harassment of my family. I feel threatened by Mr. Krasner and I do not wish to participate in this matter, which has cost my family financially and emotionally.
>
> Please accept my apology as I am sure this document is not in the format you prefer. I do not have any money for an attorney, and I do not have time to spend on this matter.

This matter was tried without a jury. Consequently, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001). Review of a trial court's application of the law to the facts is also *de novo*, without any presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

When the resolution of the issues in a case depends upon the credibility of the witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to determine the witnesses' credibility. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington*, 2010 WL 623629, at *2 (Tenn. Ct. App. Feb. 19, 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)); *see also Wells*, 9 S.W.3d at 783-84.

## ANALYSIS

Krasner first asserts that the trial court erred in declining to grant his motion for default judgment against Father. Krasner argues that default judgment should have been entered because Father's response, a motion to dismiss, was filed on October 14, 2010, thirty-one days after the complaint was filed, and no answer was ever filed in response to his complaint.

While default judgment is a "necessary part of a trial court's repertoire," it nevertheless remains a "big stick that should not be wielded haphazardly." *First Union Nat. Bank of Tenn. v. Abercrombie*, No. M2001-01379-COA-R3-CV, 2003 WL 22251347, at *3 (Tenn. Ct. App. Oct. 2, 2003). "[D]ismissals based on procedural grounds like failure to prosecute and default judgments run counter to the judicial system's general objective of disposing of cases on the merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (citing *Childress v. Bennett*, 816 S.W.2d 314, 316 (Tenn. 1991) ("it is the general rule that courts are reluctant to give effect to rules of procedure . . . which prevent a litigant from having a claim adjudicated upon its merits"); *Tenn. Dept. of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985) ("interests of justice are best served by a trial on the merits, . . .")).

In this case, Father's response to Krasner's complaint was a motion to dismiss, asserting in part that formulating an answer to the complaint was nigh to impossible because the complaint was essentially comprised of stream-of-conscious "rambling." Upon careful review of the record, the motion to dismiss was clearly a reasonable response to the complaint. We find no abuse of discretion in the trial court's decision to deny Krasner's motion for default judgment.

Krasner next asserts that the trial court erred in dismissing all of the claims in his complaint. The complaint appears to assert claims for negligent and intentional infliction of emotional distress and civil rights violations. The trial court found that there was no proof adduced at trial to support those claims.

We have carefully reviewed the transcript of the trial in this cause. With both parties proceeding *pro se*, both sides were given ample opportunity to put on proof, and the trial court asked its own questions of witnesses and patiently guided the proceedings in an effort to ascertain the facts regarding the events that transpired between the two parties. After full review of the transcript and the record as a whole, we find that the record fully supports the trial court's dismissal of the claims of infliction of emotional distress and civil rights violations.

The complaint also asserted claims against Father of defamation, libel, and slander, based on statements made by Father about Krasner in the context of the domestic dispute between Mother and Father over parenting issues. After hearing all of the witnesses and assessing their credibility, the trial judge issued an oral ruling in which he analyzed the evidence in great detail, explaining what Krasner was required to prove, and which witnesses were credited. In particular, the trial court, after seeing the testimony in open court, relied on the testimony of the police officers, and found that the statements made about Krasner were not defamatory and that Krasner did not prove damage to his reputation.

Libel and slander are both types of defamation – libel being written defamation and slander being spoken defamation. ***Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.***, 876 S.W.2d 818, 820 (Tenn. 1994). Under Tennessee law, to establish a *prima facie* claim of defamation, a plaintiff must prove that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." ***Sullivan v. Baptist Memorial Hosp.***, 995 S.W.2d 569, 571 (Tenn. 1994); ***Press, Inc. v. Verran***, 569 S.W.2d 435, 442 (Tenn. 1978). In this context, the word "publication" is simply "a term of art meaning the communication of a defamatory matter to a third person." ***Sullivan***, 995 S.W.2d at 571-72 (citing **Quality Auto Parts Co.**, 876 S.W.2d at 821).

We consider first the proof at trial on the damage to Krasner's reputation resulting from the allegedly defamatory statements. To establish any type of defamation claim, whether slander or libel, the claimant must prove that the defamation resulted in injury to the person's character and reputation. *Quality Auto Parts Co., Inc.*, 876 S.W.2d at 820 (citing *Little Stores v. Isenberg*, 172 S.W.2d 13, 16 (Tenn. Ct. App. 1943)). "To be actionable, the alleged defamatory statement must "constitute a serious threat to the plaintiff's reputation." *Davis v. Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (quoting *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983)). "It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation." *Spicer v. Thompson*, No. M2002-03110-COA-R3-CV, 2004 WL 1531431, at *5 (Tenn. Ct. App. July 7, 2004) (citing *Gobin v. Globe Publ'g Co.*, 649 P.2d 1239, 1243 (Kan. 1982); 50 Am. Jur.2d *Libel and Slander* § 2 (1995)).

Damages from false or inaccurate statements cannot be presumed; actual damages must be sustained and proved." *Davis*, 83 S.W.3d at 128 (citing *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)). "When looking at damages for a defamation suit this court has stated that, 'the issue is whether the record contains any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering.' " *Murray v. Lineberry*, 69 S.W.3d 560, 564 (Tenn. Ct. App. 2001) (citing *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997)).

In this case, on the question of his injury, Krasner points to a juvenile court order enjoining Mother from bringing Daughter around him and his pawn shop. Krasner, of course, was not related to Daughter and had no right to be around her. We agree with the trial court that this is not evidence of injury resulting from the allegedly defamatory statements. Krasner argues that the allegedly defamatory statements injured his reputation. However, the proof at trial did not establish that, prior to the allegedly defamatory statements, Krasner had a good reputation to be damaged, or the effect of the statements. Krasner makes the conclusory assertion that the statements affected his clientele at his pawn shop, but submitted no evidence to support this claim. After careful review of the record, we agree with the trial court that Krasner did not prove the essential element of damage to his reputation.

Moreover, Father's description of Krasner as "dangerous" and his assertion that Krasner dealt with "machine guns" are not defamatory. The description of Krasner as "dangerous" appears to be a statement of Father's opinion, and moreover was reasonable in light of the testimony at trial about Krasner's rather ominous and intimidating actions and demeanor, as described by the police officers who testified at trial. From the testimony at trial, including Krasner's testimony, Father's statement regarding "machine guns" was not untrue. Father's actions to shield his daughter from contact with Krasner appear responsible and reasonable under the circumstances, as reflected in the juvenile court order.

Overall, after careful review of the record, we find that it fully supports the trial court's dismissal of Krasner's complaint in this cause.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Geoffrey Todd Krasner and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE